UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

|   |   |   |
|---|---|---|
| PEDRO BAEZ, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 1:23-cv-16888 |
| Plaintiff, | ) ) |   |
| v. | ) ) |   |
| DIRECT TRUCKING CORP. d/b/a SPARC TRANSPORT, and EDWARD KIM, | ) ) ) ) |   |
| Defendants. | ) ) |   |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**I.     INTRODUCTION**

Defendants' Motion to Dismiss raises two arguments – one directed to Plaintiff's common-law claims against Defendants (Counts III-V) and the other directed to his allegations regarding diversity jurisdiction – both of which are without merit. By way of background, Plaintiff worked as a delivery driver for Direct Tucking Corp. d/b/a Sparc Transport ("Sparc"). Compl., Dkt. 1. ¶ 1. Although he was classified by Sparc as an independent contractor, Sparc exercised extensive control over Plaintiff's work, and Plaintiff worked exclusively for Sparc for almost two years. Id. ¶¶ 7, 13-15. Sparc took a number of deductions out of Plaintiff's pay, and forced Plaintiff to incur substantial out-of-pocket expenses. Id. ¶¶ 17-20. As relevant to Defendants' Motion to Dismiss, Plaintiff did not have his own truck when he came to Sparc, and the company offered him the option to lease a truck, leading Plaintiff to believe that, once he paid off the balance on the truck, he would own it outright. Id. ¶¶ 30, 34. Plaintiff paid thousands of dollars toward the truck only to find out, after he was terminated by Sparc, that he could not use the truck to make deliveries for any other companies. Id. ¶¶ 35-36. Plaintiff ultimately returned the truck to Sparc's yard. Id.

1

¶ 36.

Defendants argue that, because Plaintiff signed an Installment Sales Contract with Defendants on behalf of his corporate entity, he does not have standing to bring claims for unjust enrichment, negligent misrepresentation, and fraudulent inducement in connection with the lease. However, these common law claims, unlike a breach of contract claim, do not depend on the terms of the Installment Sales Contract, and thus the fact that Plaintiff signed the Installment Sales Contract on behalf of a corporate entity does not defeat his claims. Courts have recognized that it is common practice for delivery companies to require drivers to incorporate to provide delivery services, and caselaw in this district and around the country eschews the artificial distinction between individuals and the corporate entities they are required to form for purposes of misclassification and wage claims. See, e.g., Johnson v. Diakon Logistics, 2018 WL 1519157, at *9 (N.D. Ill. Mar. 28, 2018) ("Diakon's argument that its agreement with an entity that Johnson owned precludes Johnson's claims under the IWPCA is not a winning one.").[1] The same logic applies to Plaintiff's common-law claims in connection with his relationship with Defendants.

Moreover, it is worth noting that Plaintiff signed Sparc's independent contractor agreement, and Sparc took deductions from his pay, including for the truck payments in Plaintiff's individual capacity. See Independent Contractor Agreement, attached hereto as Exhibit A. This fact eliminates any distinction Defendants may attempt to create between Plaintiff and the entity on behalf of which he entered into the Installment Sales Contract, and undercuts Defendants' arguments that Plaintiff does not have standing to seek recovery for the truck payments.

Defendants also challenge the sufficiency of Plaintiff's claims with respect to the amount in controversy, as required to establish diversity jurisdiction. However, Defendants' brief ignores

---

[1] Plaintiff has, in addition to his common-law claims, brought misclassification claims against Defendants under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.* on behalf of himself and a class of similarly situated drivers. (Counts I and II).

2

the detailed and specific allegations in Plaintiff's Complaint which establish that his individual damages, together with interest and statutory penalties, are in excess of $75,000. See Dkt. 1 ¶¶ 7, 17-20 (Plaintiff worked for Sparc close to two years, suffered deductions which were often in excess of a thousand dollars a week, and was required to incur out-of-pocket expenses totaling hundreds of dollars per month). While the deductions and expenses alone likely exceed $75,000.00, the IWPCA also provides for statutory interest, currently set at 5% per month, for each month in which wages due to an employee remain unpaid, further increasing Plaintiff's potential damages. See 820 Ill. Comp. Stat. 115/14. To the extent Defendants suggest that Plaintiff is required to set out the detailed computation of his potential damages, the pleadings standards under the Federal Rules of Civil Procedure do not impose such a requirement. Plaintiff's allegations are sufficient to establish this Court's jurisdiction.

For these reasons, as set out further below, Defendants' Motion must be denied in its entirety.

**II.     RELEVANT FACTUAL BACKGROUND**

Plaintiff worked as a delivery driver for Direct Tucking Corp. d/b/a Sparc Transport ("Sparc") between August 2021 and June 2023. Compl., Dkt. 1. ¶ 7. Plaintiff did not have his own truck when he came to Sparc, and the company offered him the option to lease a truck, leading Plaintiff to believe that, once he paid off the balance on the truck, he would own it outright. Id. ¶¶ 30, 34.

Plaintiff worked for Sparc Transport full time, up to 14 hours a day, 5 days a week, and did not work anywhere else while working for Sparc. Id. ¶ 13. Plaintiff was required to regularly check in with Sparc Transport's dispatchers to take their instructions as to which loads to haul, and where and when to pick up these loads, and was required to comply with Sparc Transport's strict time constraints for deliveries and other instructions. Id. ¶¶ 14-15.

3

Sparc took a number of deductions out of Plaintiff's pay for items such as insurance, tolls, and a fuel card and escrow, and forced Plaintiff to incur substantial out-of-pocket expenses for cell phone payments, truck maintenance and repairs, and GPS. Id. ¶¶ 17-20. In addition, as relevant to the Motion to Dismiss, Plaintiff made monthly payments, totaling thousands of dollars, toward the truck he leased from Sparc, only to find out, after he was terminated by Sparc, that he could not use the truck to make deliveries for any other companies. Id. ¶¶ 35-36. Plaintiff ultimately returned the truck to Sparc's yard. Id. ¶ 36.

Plaintiff filed his Complaint in this case on December 18, 2023, alleging claims for misclassification and unlawful deductions and expenses in violation of the IWPCA (Counts I and II), as well as common-law claims for unjust enrichment, negligent misrepresentation, and fraudulent inducement (Counts III-V). Dkt. 1. Defendants filed a Motion to Dismiss on February 19, 2024, seeking dismissal of Counts III-V for failure to state a claim, and dismissal of the Complaint as a whole for lack of jurisdiction based on the amount in controversy requirement under 28 U.S.C. § 1332(a). See Dkt. 11.

### III.  LEGAL STANDARD

As the Supreme Court has made clear, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," Bell A. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and instead needs only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570) (emphasis added). In accordance with this standard, on a motion to dismiss, "[a]ll well-pleaded facts are accepted as true and are construed in favor of the plaintiff."

4

Hickey v. O'Bannon, 287 F.3d 656, 657–58 (7th Cir. 2002) (citing McLeod v. Arrow Marine Transp., Inc., 258 F.3d 608, 614 (7th Cir.2001)).

"Motions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case," and "[i]n the context of a motion to dismiss for lack of subject matter jurisdiction, [the court] accept[s] as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff[.]" Center for Dermatology & Skin Cancer, Ltd. v. Burwell, 770 F.3d 586, 588 (7th Cir. 2014). In order to establish standing under Rule 12(b)(1), a plaintiff must show that he "has suffered a concrete and particularized injury that is both fairly traceable to the challenged conduct and likely to be redressed by a favorable judicial decision." Bazile v. Fin. System of Green Bay, Inc., 983 F.3d 274, 278 (7th Cir. 2020) (citing Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).

### IV. ARGUMENT

#### A. Plaintiff has standing to bring claims relating to the lease agreement he entered into with Sparc

Defendants seek dismissal of Plaintiffs' common-law claims against Sparc based on his lease of a truck from Sparc. Specifically, Defendants argue that, because Plaintiff entered into the "Installment Sales Agreement" with Sparc on behalf of his corporate entity, he lacks standing to bring claims for damages which stem from this agreement. Defendants' argument, although frequently made by trucking companies in misclassification cases, has been as frequently rejected by courts. See, e.g., Hill v. Cargo Runner Co., 2023 WL 6213674, at *14 (N.D. Ill. Sept. 25, 2023) ("Employers have tried to circumvent the IWPCA . . . by requiring that individuals work through a third-party corporate entity. The courts in Illinois . . . frequently reject these end-runs and find a plausible employment agreement with individuals, even if the individuals were paid through a corporate entity."); see also Latipov v. AN Enter., Inc., 2024 WL 474166, at *3 (N.D. Ill. Feb. 7,

5

2024) (denyng motion to dismiss) ("Latipov alleges that Defendants unlawfully deducted from his wages and failed to reimburse him . . . Whether Latipov's incorporation precludes him from recovery for those injuries is a determination of his employment status under relevant [] state law. Defendants ultimately raise a question of the merits of Latipov's claims, not this Court's jurisdiction to hear them."); Johnson, 2018 WL 1519157, at *1 (N.D. Ill. Mar. 28, 2018) (denying motion to dismiss) (Diakon's argument that its agreement with an entity that Johnson owned precludes Johnson's claims under the IWPCA is not a winning one."); Brandon v. 3PD, Inc., 2014 WL 11348998, at *9 (N.D. Ill. Aug. 6, 2014) (finding delivery drivers who signed contracts on behalf of corporate entities to be adequate class representative under the IWPCA); Carrow v. FedEx Ground Package Sys., Inc., 2019 WL 7184548 at *6 (D.N.J. Dec. 26, 2019) (mere fact of incorporation does not "bar[] Plaintiffs' claims on the merits"); DaSilva v. Border Transfer of MA, Inc., 377 F. Supp. 3d 74, 87 (D. Mass. 2019) ("The class members' incorporation does not preclude their Wage Act claims.").

Plaintiff's common law claims, like his IWPCA claims, do not depend on the terms of his agreement with Defendants,[2] and the fact that he signed the Installment Sales Contract on behalf of a corporate entity does not bar him from relief. As in Hill and in myriad other delivery driver cases, Plaintiff was required sign a contract with Sparc through a corporate entity. He claims that he was, in fact, an employee of Sparc under the IWPCA (as set out in Counts I and II), and that, in order to perform deliveries for Sparc, he was required to have a truck, and Sparc led him to enter into what it described as a lease-to-purchase arrangement, which led Plaintiff to pay

---

[2] See Johnson v. Diakon Logistics, Inc., 44 F.4th 1048, 1052 (7th Cir. 2022), reh'g denied, 2022 WL 4290757 (7th Cir. Sept. 16, 2022) (collecting cases) ("If the critical test for determining whether plaintiffs count as employees for purposes of the [IWPCA] comes from the statute rather than a contract, then the Service Agreement is irrelevant, no matter what it says."); see also Utility Audit, Inc. v. Horace Mann Service Corp., 383 F.3d 683, 687 (7th Cir.2004) ("In determining whether a claim falls outside a contract, the subject matter of the contract governs, not whether the contract contains terms or provisions related to the claim").

thousands of dollars for the truck each month, only to learn that he would not own it outright, and would have to return it to Sparc. Dkt. 1 ¶¶ 30, 34-36. The fact that Defendants required Plaintiff to sign the Installment Sales Contract on behalf of his corporate entity does not – and should not – preclude Plaintiff from obtaining relief for Defendants' unfair practices. See, e.g., Kloppel v. HomeDeliveryLink, Inc., 2019 WL 6111523, at *4 (W.D.N.Y. Nov. 18, 2019) (quoting Padovano v. FedEx Ground Package Sys., Inc., 2016 WL 7056574, at *4 (W.D.N.Y. Dec. 5, 2016)) ("To be sure, '[i]f any business could avoid the Fair Play Act by simply classifying their workers as independent contractors and compensating them through corporations rather than paying them directly, the Fair Play Act would be rendered useless.'").

One key fact in this case, which severely undermines Defendants' argument, is that the weekly pay statements Sparc issued were made out to Plaintiff individually, *not* to Baez Trucking. See Ex. A. Accordingly, the deductions Defendants took – including monthly deductions for truck payments, were taken out of *Plaintiff's* pay.[3] As a result, Plaintiff clearly has standing to recover these payments though his common-law claims in this case.

### B. Plaintiff has Put Forth Sufficient Allegations to Satisfy the Amount in Controversy Requirement

Defendants argue that "the Complaint does not contain factual allegations from which it can be determined that the Plaintiff's claims satisfies the amount in controversy requirement." Dkt. 11 p. 2. However, a close reading of the Complaint provides ample support for Plaintiff's allegation that the amount in controversy in this case exceeds $75,000 (Dkt. 1 ¶ 8 ("taken individually,

---

[3] This exhibit is properly included with Plaintiff's opposition, and can be considered by the Court. See Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp., 247 F. Supp. 2d 987, 1000 (N.D. Ill. 2002) (quoting Help At Home Inc. v. Medical Capital, L.L.C., 260 F.3d 748, 752–53 (7th Cir. 2001)) ("a party 'need not put all of the essential facts in the complaint; he may add them by affidavit or brief' as long as the 'facts are consistent with the allegations of the complaint.'"

7

Plaintiff's claims, with interest and statutory penalties, exceed $75,000"). Specifically, Plaintiff has alleged that:

- He worked for Sparc for twenty-two months. Dkt. 1 ¶ 7.
- He had thousands of dollars deducted from his pay each week for truck payments, insurance, tolls, and a fuel card Id. ¶¶ 17-18.[4]
- He was required to pay a $5,000 escrow to Defendants Id. ¶ 19.
- He paid hundreds of dollars out-of-pocket each month in expenses which he incurred in the course of his work for Defendants Id. ¶ 20.
- He made lease payments toward a truck which he thought he would own outright, and which he instead had to return to Defendants
- His claims under the IWPCA entitle him to statutory interest of 5% per month, as well as reasonable attorneys' fees and costs Id. at Claim for Relief.

These allegations are sufficient, at the pleadings stage, to show that Plaintiff meets the amount in controversy requirement. See Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 541 (7th Cir. 2006) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938)) ("the sum claimed by [the proponent of federal jurisdiction] controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."); see also Johnson v. Wattenbarger, 361 F.3d 991, 993 (7th Cir. 2004) ("If the complaint as filed puts more than $75,000 at issue, then a district court has jurisdiction and may resolve on the merits every legal theory and aspect of damages.").

## V. CONCLUSION

---

[4] This allegation alone (which must, at the motion to dismiss stage, be taken as true), combined with Plaintiff's tenure at Sparc, brings his claims above the $75,000 threshold. Plaintiff had approximately 4,500.00 a month – or $99,000 over 22 months – taken out of his pay.

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety.

Dated: March 12, 2024

Respectfully Submitted,

PEDRO BAEZ, individually and
on behalf of all others similarly situated,

*Plaintiff*,

By his attorneys,


/s/ Olena Savytska

Harold L. Lichten (*pro hac vice*)
Olena Savytska (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (617) 994-5800
Fax (617) 994-5801
hlichten@llrlaw.com
osavytska@llrlaw.com


Bradley Manewith, IARDC # 6280535
Lichten & Liss-Riordan, P.C.
5 Revere Drive, Suite 200
Northbrook, IL 60062
Tel. (617) 994-5800
Fax (617) 994-5801
bmanewith@llrlaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record through the Court's ECF system this 12th day of March, 2024.


s/ Olena Savytska

Olena Savytska

9