IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

PEDRO BAEZ, individually and
on behalf of all others similarly situated,

        Plaintiff,

v.

DIRECT TRUCKING CORP. d/b/a
SPARC TRANSPORT, and
EDWARD KIM,

        Defendants.

Case No. 1:23-cv-16888

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION PURSUANT TO FED R. CIV. P. 23 AND MEMORANDUM IN SUPPORT THEREOF**

I.   INTRODUCTION

Plaintiff Pedro Baez worked as a delivery driver for Defendant Direct Trucking, otherwise known as Sparc Transport ("Sparc"), providing delivery services for Defendant's customers and was classified as an independent contractor. He asserts he was in fact Sparc's employee under the strict ABC test set out in the Illinois Wage Payment and Collection Act ("IWPCA"). As a result of his misclassification, he alleges he suffered unlawful deductions from his pay in violation of the IWPCA, 820 Ill. Comp. Stat. 115/9, and was required to pay for business expenses which should have been properly borne by Sparc under the IWPCA, 820 Ill. Comp. Stat. 115/9.5. Plaintiff has brought claims on behalf of himself and a class of similarly situated individuals.[1] He now respectfully requests that this Court: (1) certify a class consisting of all individuals who entered into a contract with Sparc to perform delivery services; who personally made deliveries for Sparc full-time between December 2013 and the present and who were classified as independent contractors; (2) appoint the named plaintiff, Pedro Baez, as class representative; and (3) appoint Lichten & Liss-Riordan, P.C. as class counsel.[2]

Although they all signed the same agreements classifying them as independent contractors, Sparc controlled most aspects of Plaintiff and potential class members' work in a manner suggestive of an employer-employee relationship. Plaintiff and the potential class members in this case performed the same work of hauling freight for Sparc's customers, took instructions from Sparc's dispatchers, drove trucks with Sparc's logo and DOT number, and delivered for Sparc full time. They were paid a set rate, based on the number of cents per mile, and Sparc made deductions from their pay for escrow, insurance, GPS devices, and toll payments. Drivers paid out of pocket for fuel and

---

[1] Plaintiff has brought Counts III through V of his Amended Complaint as an individual and only seeks class certification on Counts I and II, under the IWPCA for deductions and expenses. See First Amended Complaint, Dkt. 21.

[2] Plaintiff's proposed Notice is attached hereto as Exhibit A.

1

maintenance, and Sparc did not reimburse them for these expenses. Sparc required drivers to undergo background checks, drug testing, and a driving record check and to sign form contracts, promulgated by Sparc, labeling them as independent contractors. Notwithstanding the label, the drivers were Sparc's employees according to the IWPCA. Sparc's policies of taking deductions from their pay and forcing them to bear business expenses violate the IWPCA.

Sparc is not unique in its practice of misclassifying its delivery drivers as independent contractors and taking deductions from their pay. Courts in Illinois and in other states which use the "ABC" test[3] have routinely certified classes of truck drivers bringing identical claims to those asserted here.[4] In a recent case involving nearly identical facts, a court in this District certified a class of delivery drivers who, like the delivery drivers in this case, made interstate deliveries for an Illinois-

---

[3] This test provides that an individual performing any service is considered an employee unless the alleged employer can establish that the individual is (1) free from control and direction over the performance of his work, both under his contract of service with him and in fact; (2) the work is performed either outside the usual course of business of the employer or outside all of the places of business of the employer; and (3) that the individual is customarily engaged in an independently established trade, occupation, profession or business. See 820 ILCS 115/2.

[4] See, e.g., Rivers v. Southway Carriers, Inc., 2024 WL 579734, at *5 (N.D. Ill. Feb. 13, 2024) (certifying class of truck drivers bringing IWPCA claims who all operated under the same agreements which governed their relationship with the defendant); Prokhorov v. IIK Transp., Inc., 2023 WL 2711599, at *10 (N.D. Ill. Mar. 30, 2023); Tsybikov v. Dovgal, 2022 WL 1238853, at *1 (N.D. Ill. Apr. 27, 2022) (certifying class of delivery drivers alleging misclassification and improper deductions under the IWPCA); Johnson v. Diakon Logistics ("Diakon"), 2020 WL 405636, at *2 (N.D. Ill. Jan. 23, 2020) (same); Brown v. Club Assist Rd. Serv. U.S., Inc., 2015 WL 13650775, at *15 (N.D. Ill. Mar. 13, 2015) (concluding that class certification is appropriate for IWPCA claims where "all of the class members perform the same work for Defendant . . . governed by the same agreements"); Spates v. Roadrunner Transportation Sys., Inc., 2016 WL 7426134, at *3 (N.D. Ill. Dec. 23, 2016) (same); Brandon v. 3PD, Inc., 2014 WL 11348998, at *5-16 (N.D. Ill. Aug. 6, 2014), report and recommendation adopted, Brandon v. 3PD, Inc., 2014 WL 11348985 (N.D. Ill. Oct. 20, 2014) (same); Thomas v. Matrix Corp. Servs., Inc., 2012 WL 3581298, at *3 (N.D. Ill. Aug. 17, 2012) (same); Ladegaard v. Hard Rock Concrete Cutters, Inc., 2001 WL 1403007, at *9 (N.D. Ill. Nov. 9, 2001) (granting class certification to truck drivers under the IWPCA); Acosta v. Scott Labor LLC, 2006 WL 27118, at *6 (N.D. Ill. Jan. 3, 2006) (same); O'Brien v. Encotech Constr. Servs., Inc., 203 F.R.D. 346, 353 (N.D. Ill. 2001) (same). See also Spates, 2016 WL 7426134 at *3 ("Each part of the [ABC] test entails evidence that will apply equally to all class members"); Brandon, 2014 WL 11348998 at *10 (agreeing that ABC inquiry "turns on class-wide evidence, rather than individualized assessments of drivers' particular actions and circumstances."); Green v. XPO Last Mile, Inc., 2022 WL 4380959, at *4 (D. Conn. Sept. 22, 2022) ("[C]lass certification may be granted if the commonality requirement is established as to any one of the three 'prongs' of the ABC test."); Ludlow v. Flowers Foods, Inc., 2022 WL 2441295, at *6 (S.D. Cal. July 5, 2022) ("Here, the Court faces a common question at the heart of the action—whether Defendants misclassified its distributors as independent contractors instead of employees. And this common question can largely be determined by common evidence of Defendants' overarching business structure and business practices."); De Giovanni v. Jani-King Intern., Inc., 262 F.R.D. 71, 84–85 (D. Mass. 2009) ("Common questions will predominate for the plaintiffs' employment classification class under all three prongs of the Massachusetts [ABC] test") (emphasis added)).

based employer, and brought misclassification, deduction and expense claims under the IWPCA. Tsybikov v. Dovgal, 2022 WL 1238853, at *1 (N.D. Ill. Apr. 27, 2022) (Leinenweber, J.).

Class certification is particularly appropriate given the strict ABC test for employment status under the IWPCA. See Costello v. BeavEx, Inc., 810 F.3d 1045, 1050 (7th Cir. 2016), cert. denied, 137 S. Ct. 2289 (2017). The IWPCA's definition is broad, and the test is conjunctive, "meaning that if an employer cannot satisfy each of the prongs, then the individual must be classified as an employee for purposes of the IWPCA." Id. (citing 820 ILCS 115/2). Because "at least parts of the ABC test are subject to common proof, class-wide resolution is the most efficient means of resolving" the question whether drivers were employees under the IWPCA. Vera v. HomeDeliveryLink, Inc., No. 23 CV 14278, 2025 WL 20468 at *7 (N.D. Ill. Jan. 2, 2025) (certifying class of delivery drivers bringing misclassification claims under the IWPCA). By virtue of the Illinois ABC test, almost all courts considering motions for class certification of delivery drivers challenging their classification as independent contractors have found class certification to be appropriate.[5] Here, class certification is proper because Plaintiff and class members were classified as independent contractors; were required to undergo drug testing and background checks; were required to complete standardized training; were subject to the same set of rules and requirements set out by Sparc; were subject to Sparc's standard policies regarding deductions; and were forced to bear business expenses which should have been properly borne by Sparc.

---

[5] See BeavEx, 810 F.3d at 1059 ("Prong two [of the ABC test] *only* requires common evidence about BeavEx's business model." (emphasis added)); Roadrunner, 2016 WL 7426134, at * 3 ("Each part of the [ABC] test entails evidence that will apply equally to all class members."); Brown v. Club Assist Rd. Serv. U.S., Inc., 2015 WL 13650775, at *15 (N.D. Ill. Mar. 13, 2015) (finding class certification appropriate for IWPCA claims where "all of the class members perform the same work for Defendant . . . that are governed by the same agreements"); Brandon, 2014 WL 11348998, at *10 (agreeing with assertion that inquiry "turns on class-wide evidence, rather than individualized assessments of drivers' particular actions and circumstances"); see also De Giovanni v. Jani-King Intern., Inc., 262 F.R.D. 71, 84–85 (D. Mass. 2009) ("Common questions will predominate for the plaintiffs employment classification class under *all three prongs* of the Massachusetts [ABC] test." (emphasis added)); Martins v. 3PD, 2013 WL 1320454, at *6 (D. Mass. Mar. 28, 2013) ("That Part 2 of the [ABC] test presents common questions of law and fact is beyond dispute" since "*only* evidence common to the class is relevant to this consideration.").

3

##  II.     FACTUAL BACKGROUND

Sparc Transport provides freight delivery services in the Midwestern and Southeastern United States. Sparc has its headquarters and main office in Illinois, where drivers regularly make deliveries and complete their paperwork. To carry out its delivery services, Sparc hires drivers like Plaintiff.[6]

Plaintiffs and class members were required to sign standardized Independent Contractor Agreements with Sparc prior to beginning work, which classified them as independent contractors and detailed their rights and obligations. See Independent Contractor Agreement (Ex. B); Baez Decl. (Ex. C) ¶ 2; Benavidez Decl. (Ex. D) ¶ 2; Bailes Decl. (Ex. E) ¶ 2; Jones Decl. (Ex. F) ¶ 2; Rodriguez Decl. (Ex. G) ¶ 2; Sanchez Aff. (Ex. H) ¶ 2. Plaintiff and class members were also required to undergo background checks, drug tests, and a driving record check before beginning work for Sparc. Baez Decl. ¶ 4; Benavidez Decl. ¶ 4; Bailes Aff. ¶ 4; Jones Decl. ¶ 4; Rodriguez Decl. ¶ 4; Sanchez Decl. ¶ 4. Furthermore, all drivers received their delivery assignments from Sparc dispatchers and were required to communicate with Sparc about delivery progress. See Baez Decl. ¶ 9; Benavidez Decl. ¶ 8; Bailes Aff. ¶ 8; Jones Decl. ¶ 9; Rodriguez Decl. ¶ 8; Sanchez Decl. ¶ 8. Drivers also had a GPS device which Sparc required to be kept in their trucks. Baez Decl. ¶ 11; Benavidez Decl. ¶ 11; Bailes Aff. ¶ 11; Sanchez Decl. ¶ 11. Sparc required drivers to follow various safety and operational policies, including paying fines for delivery or maintenance issues. See Baez Decl. ¶ 11; Benavidez Decl. ¶¶ 10-11; Bailes Aff. ¶ 10; Jones Decl. ¶ 11.

The trucks Plaintiff and other drivers drove bore Sparc's logo and were registered under Sparc's DOT number. Baez Decl. ¶ 5; Benavidez Decl. ¶ 5; Bailes Aff. ¶ 5; Jones Decl. ¶ 5; Rodriguez Decl. ¶ 5; Sanchez Decl. ¶ 5. Plaintiff and other drivers worked full-time for Sparc, between 60 and 70 hours per week. Baez Decl. ¶¶ 5-7; Benavidez Decl. ¶ 7; Bailes Aff. ¶ 7; Jones Decl. ¶ 8; Rodriguez Decl. ¶ 7; Sanchez Decl. ¶ 7. Because of the long hours working for Sparc and because the trucks

---

[6] See Careers, Sparc Transport, https://www.sparcway.com/careers (last visited Sept. 5, 2025).

were registered under Sparc's DOT number, drivers hauled freight exclusively for Sparc. Id. Sparc paid drivers a set rate, based on cents per mile, which was determined by Sparc. Kim Tr. (Ex. I) at 50; Ryu Tr. (Ex. J) at 18; Baez Decl. ¶ 9; Benavidez Decl. ¶ 6; Bailes Aff. ¶ 6; Jones Decl. ¶ 6; Rodriguez Decl. ¶ 6; Sanchez Decl. ¶ 6. Sparc dispatchers gave instructions to drivers about where and when to pick up loads. Baez Decl. ¶ 8; Benavidez Decl. ¶ 8; Bailes Aff. ¶ 8; Jones Decl. ¶ 9; Rodriguez Decl. ¶ 8; Sanchez Decl. ¶ 8.

Sparc took deductions from Plaintiff's and other delivery drivers' pay for items including insurance, truck and trailer rental payments, fuel, toll passes, cargo and liability insurance, occupational accident insurance, tolls, escrow, and ELD service. See Baez Decl. ¶ 10; Benavidez Decl. ¶ 9; Bailes Aff. ¶ 9; Jones Decl. ¶ 10; Rodriguez Decl. ¶ 9; Sanchez Decl. ¶ 9; Ryu Tr. 33-35. Finally, Plaintiff and other drivers were forced to bear out-of-pocket expenses in the course of their work for Sparc, including for fuel, cell phones, GPS devices, truck maintenance, and insurance, for which they were not reimbursed. Baez Decl. ¶ 10; Benavidez Decl. ¶ 11; Bailes Aff. ¶ 11; Jones Decl. ¶ 14; Sanchez Decl. ¶ 10.

### III. LEGAL STANDARD

To be certified, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a), as well as one of three alternatives in Rule 23(b). See Messner v. Northshore U. HealthSystem, 669 F.3d 802, 811 (7th Cir. 2012) (citing Siegel v. Shell Oil Co., 612 F.3d 932, 935 (7th Cir. 2010)). The proposed class must meet Rule 23(a)'s requirements of numerosity, typicality, commonality, and adequacy of representation. When certification is sought under Rule 23(b)(3) proponents must also show: (1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy. Id. Finally, "the class itself must be 'identifiable,' meaning that the 'class definitions must be definite enough that the class

can be ascertained.'" Johnson, 2020 WL 405636, at *2 (quoting Oshana v. Coca–Cola Co., 472 F.3d 506, 513 (7th Cir. 2006)).

IV.  **ARGUMENT**

Plaintiff satisfies the requirements of Rule23(a) and 23(b)(3) for the purposes of his IWPCA claim which turns on his classification, and that of other putative class members. Due to the nature of independent contractor employment misclassification claims the Supreme Court has "expressed a strong preference for rendering decisions on the classification of employees on [a] class wide basis." De Giovanni v. Jani-King Int'l, Inc., 262 F.R.D. 71, 86 (D. Mass. 2009) (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 327 (1992) (holding determination of employment status "generally turns on factual variables within an employer's knowledge, thus permitting categorical judgments about the 'employee' status of claimants with similar job descriptions")); accord Thomas v. Matrix Corp. Servs., Inc., 2012 WL 3581298, at *3 (N.D. Ill. Aug. 17, 2012) ("[C]lass action remains the most efficient way to resolve [misclassification and deductions claims].").[7]

**A. Plaintiffs Satisfy the Requirements of Rule 23(a).**

**1. The members of the class are so numerous that joinder is impracticable.**

Rule 23(a)(1) requires that a class must be "so numerous that joinder … is impracticable." Courts have repeatedly held that at least 40 class members satisfies the numerosity requirement. See Oplchenski v. Parfums Givenchy, Inc., 254 F.R.D. 489, 495 (N.D. Ill. 2008) (collecting cases). In this case, records provided by Sparc indicate that several hundred driver contractors worked for them.[8]

---

[7] Accordingly, courts routinely certify misclassification claims under Fed. R. Civ. P. 23. See, e.g., Roadrunner, 2016 WL 7426134, at *3 (certifying class of delivery drivers under identical Illinois ABC test); BeavEx, Inc., C.A. 12-cv-07843, Doc. 170 (N.D. Ill. June 14, 2016) Order Certifying Class (certifying class of delivery drivers under Illinois law); Brandon, 2014 WL 11348998, at *5-16 (certifying class of delivery drivers under Illinois law; Phelps v. 3PD, Inc., 261 F.R.D. 548, 554-63 (D. Or. 2009) (certifying class of delivery drivers under Oregon law); Thomas, 2012 WL 3581298, at *3 (certifying a class of workers under the IWPCA that were classified as independent contractors).

[8] These records include driver names and addresses, and so are not being filed as an exhibit. However, they can be provided to the Court for *in camera* review upon request.

That significantly exceeds the threshold of numerosity identified by courts in the Seventh Circuit, and joinder of hundreds of class members would be impracticable. See Mulvania v. Sheriff of Rock Island Cnty., 850 F.3d 849, 859 (7th Cir. 2017) (noting that a "forty-member class is often regarded as sufficient" to meet the numerosity requirement); Anderson v. Weinert Enters., Inc., 986 F.3d 773, 777 (7th Cir. 2021) (holding the key inquiry is the practicability of joinder).

      2.      **The claims at issue in this case satisfy the commonality requirement.**

Plaintiff's contention that he and class members were employees rather than independent contractors meets the commonality requirement. Rule 23(a)(2) requires that "questions of law or fact" be "common to the class." Commonality requires the identification of an issue that is by its nature "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011); Saf-T-Gard Intern., Inc. v. Vanguard Energy Servs., LLC, 2012 WL 6106714, at *3 (N.D. Ill. 2012) (commonality inquiry focuses on whether a class-wide proceeding will "generate common answers apt to drive the resolution of the litigation."). Plaintiff's claim that he and class members were employees, once answered, will "resolve an issue central to the validity of each claim." Johnson, 2020 WL 405636, at *4.

Plaintiff challenges a uniform scheme whereby Sparc misclassified of drivers as independent contractors, take unlawful deductions from their pay, and forced them to bear business expenses which should have been borne by Sparc. The legal question thus turns on whether the proposed driver class members are employees under the IWPCA. Under the strict "ABC" test, if Sparc fails to satisfy just one prong, its drivers must be treated as employees. See BeavEx, 810 F.3d at 1050; Brandon, 2014 WL 11348998, at *10 (citing AFM Messenger Serv., Inc. v. Dept. of Empl. Sec., 763 N.E.2d 272, 283 (Ill. 2001)). While the measure of deductions and expenses may vary among the class, that issue does not defeat commonality. See Butler v. Sears, Roebuck and Co., 727 F.3d 796, 801 (7th Cir.

2013) ("If the issues of liability are genuinely common issues . . . the fact that damages are not identical across all class members should not preclude class certification.").

Each of the three parts of the ABC test calls for evidence that will apply equally to all class members, and each driver is similarly situated with respect to the criteria to be evaluated. Nowhere is this more apparent than under prong B, which looks **only** at Defendant's business.[9] If the Court determines that Plaintiffs' and class members' delivery work was performed within Sparc's usual course of business and places of business, the inquiry is complete.[10] Prong B "**only** requires common evidence about [the defendant's] business model, which is applicable to all class members." BeavEx, 810 F.3d at 1059–60 (emphasis added). Therefore, "certifying the class for purposes of prong [B] would substantially advance the litigation . . . If answered in Plaintiffs' favor, all of [the class members] would have to be classified as employees under the IWPCA, eliminating the need for any individualized factfinding." Id. at 1060.

Under Prong B, the Court looks at whether the drivers performed "work which is either outside the usual course of business or is performed outside of all the places of business of the employer." See Chicago Messenger Serv. v. Jordan, 825 N.E.2d 315, 324 (Ill. App. Ct. 2005) (drivers perform work within the normal course of business for delivery company). Though the Court need not reach the merits at the class certification stage, here, "the drivers' [] freight delivery services are not just the normal course of Defendants' business, but Defendants' whole business." Id. Sparc "provide[s] transportation services" to its customers by moving containers. Kim Tr. 8. Evidence from Sparc itself can establish for the whole class that drivers' work was within Sparc's usual course of business.

---

[9] See Vera, 2025 WL 20468, at *3 ("HDL's 'usual course of business' or 'place[] of business' would not vary by individual driver, so determining that usual course or place would resolve the issue for the entire class.").

[10] See BeavEx, 810 F.3d at 1050 ("the test is conjunctive, meaning that if an employer cannot satisfy each of the prongs, then the individual must be classified as an employee for purposes of the IWPCA."). "[I]f the employer cannot satisfy *just one prong* of the test, the inquiry into employment status ends." Id. at 1060 (emphasis added).

Further, the locations where Defendants have offices and meet with the drivers, the location where drivers pick up the freight, the delivery routes, and the customers' locations are all encompassed within Defendants' place of business. See id. (an employer's "place of business" is not limited to its own offices, but extends to any location where workers regularly represent an employer's interest); see, e.g., Kim Tr. 17 (describing physical interactions with drivers at Sparc main offices). Sparc delivers mostly in Illinois and its surrounding states, see Kim Tr. 11, so the Court can examine evidence of Sparc's business practices which do not vary by individual driver, to determine the usual course of business on a class-wide basis.

      Plaintiff can also show commonality under prongs A and C of the IWPCA's test. On Prong A, the Seventh Circuit has held a "right to control" analysis for purposes of employment status can be resolved through common evidence. BeavEx, 810 F.3d at 1060; see also Ill. Admin. Code Tit. 56 § 300.460 (defining "control" as "the existence of general control or right to general control, even though the details of work are left to an Individual's judgment"). When drivers can show the existence of uniform agreements signed by all drivers, courts have found such a right to control.[11] Plaintiffs and class members in this case signed such a uniform agreement. They were also subject to uniform rules and policies promulgated by Sparc, including background checks and drug testing (see Kim Tr. 26-27; Baez Decl. ¶ 4; Benavidez Decl. ¶ 4; Bailes Aff. ¶ 4; Jones Decl. ¶ 4; Rodriguez Decl. ¶ 4; Sanchez Decl. ¶ 4); preliminary training (see Kim Tr. 27); mandated communication with dispatchers (see Baez Decl. ¶ 8; Benavidez Decl. ¶ 8; Bailes Aff. ¶ 8; Jones Decl. ¶ 9; Rodriguez Decl. ¶ 8; Sanchez Decl. ¶ 8) and use of trucks bearing Sparc's logo and DOT number (see Baez Decl. ¶ 5; Benavidez Decl. ¶ 5; Bailes Aff. ¶ 5; Jones Decl. ¶ 5; Rodriguez Decl. ¶ 5; Sanchez Decl. ¶ 5; Kim Tr. 39). The

---

[11] See, e.g., Alexander v. FedEx Ground Package Sys., Inc., 765 F.3d 981 (9th Cir. 2014) (finding FedEx misclassified its California drivers "right to control" test based on operating agreements); Slayman v. FedEx Ground Package Sys., Inc., 765 F.3d 1033, 1042-47 (9th Cir. 2014) (finding FedEx misclassified its Oregon drivers in violation of the "right to control" test for Oregon's deductions statute, and under the Oregon's "economic realities" tests for unpaid overtime based on operating agreements).

degree of control Sparc exercised over its drivers is largely a "matter of company policy" which by its nature applies uniformly to each driver. See Roadrunner, 2016 WL 7426134, at * 3.

Finally, whether drivers were operating an independently established business (Prong C) can also be adjudicated through common evidence. According to the Department of Labor's regulations, in order to be in an independently established business, the individual performing the services must have "a proprietary interest in such business, to the extent that he/she operates the business without hindrance from any other person and, as the enterprise's owner, may sell or otherwise transfer the business." Ill. Admin Code Tit. 56 § 300.460.[12] In the present case, drivers simply are not able to perform deliveries for any other company while they are working for Sparc. They operate under Sparc's DOT number, and since they work extensive hours ranging from 60-70 hours per week. See Baez Decl. ¶¶ 5-7; Benavidez Decl. ¶ 7; Bailes Aff. ¶ 7; Jones Decl. ¶ 8; Rodriguez Decl. ¶ 7; Sanchez Decl. ¶ 7; see also Kim Tr. 36 (acknowledging drivers can work for Sparc for 14 hours a day). Sparc was their exclusive source of income. Common evidence will demonstrate that the putative class members are employees under Prong C.

### 3. Plaintiffs satisfy the typicality requirement.

Plaintiff's claims in this case are typical of those of the class. In order to satisfy the typicality requirement, "[T]he claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); Brandon, 2014 WL 11348998, at *11. "Plaintiffs satisfy the typicality requirement when their claims arise 'from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory.'" Johnson, 2020 WL 405636, at *5. Plaintiff and class members worked as delivery drivers

---

[12] See also AFM Messenger Serv., 763 N.E.2d at 285 (finding defendant delivery company failed to satisfy prong three because the drivers were not "able to operate their 'delivery business' without the benefit of their relationship with" the delivery company).

10

for Sparc. They were all classified as independent contractors and subject to a common set of wage deductions made by Sparc[13] and were forced to incur out-of-pocket a set of expenses which should have been borne by Sparc. The amount of improper deductions, which may vary from driver to driver, relates to the measure of damages and not to the propriety of class certification. See, e.g., Roadrunner, 2016 WL 7426134, at *4 (finding class certification appropriate where the "pay statements and independent contractor agreement suggest that the deductions fall into recurring categories common to all class members….").

### 4. Plaintiff and his counsel will adequately represent the interests of the class.

"[A]dequacy of representation is composed of two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." Retired Chicago Police Ass'n, v. City of Chicago, 7 F.3d 584, 598 (7th Cir. 1993). Here, "the claims of the named Plaintiff[] are essentially identical to those of the proposed class members" and "[t]here are no individual defenses or other claims that would in any way impede the named Plaintiff['s] ability to adequately represent the interest of the class members." Starr v. Chicago Cut Steakhouse, LLC, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014). With respect to adequacy of representation, Plaintiff's counsel are well-qualified and experienced in class action litigation[14] and have obtained summary judgment, class certification, and favorable class

---

[13] Defendants are likely to argue that Plaintiffs and the class members consented to some of the deductions. However, this argument does not defeat typicality. Sparc has not put forth any evidence that drivers consented to specific deductions *at the time they were made* as required by the IWPCA.

[14] See, e.g., Hill v. Cargo Runner Co., 2023 WL 6213674 (N.D. Ill. Sept. 25, 2023). Lichten & Liss-Riordan, P.C. regularly represents classes of workers challenging unlawful employment practices, and its attorneys have been deemed "well qualified and experienced in class actions on behalf of employees." Overka v. American Airlines, 2010 WL 517407, at *3 (D. Mass., Feb. 4, 2010); see also Davis v. Omnicare, Inc., 2021 WL 1214501, at *6 (E.D. Ky. Mar. 30, 2021) ("Counsel from Lichten & Liss-Riordan, PC has spent 37 years as a labor and employment attorney and specializes in classification questions regarding employees and independent contractors.").

11

settlements in many other delivery driver misclassification cases in Illinois.[15] The adequacy requirement is met in this case.

### B. Plaintiff Satisfies the Requirements of Rule 23(b)(3).

#### 1. Common issues of law and fact predominate.

Plaintiff can show that his proposed class is sufficiently cohesive to warrant adjudication by representation. See Butler, 727 F.3d at 801 (discussing predominance and quoting Amchem Products v. Windsor, 521 U.S. 591, 623 (1997)). Rule 23(b)(3) requires that "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Sparc's standard policies regarding deductions and requiring drivers to bear expenses make clear that these issues can be resolved on a class-wide basis. The predominance requirement is met where "'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" Messner v. Northshore U. HealthSystem, 669 F.3d 802, 815 (7th Cir. 2012) (quoting 7AA Wright & Miller, Fed. Prac. & Pro. Civ. § 1778 (3d ed. 2011)).

Common issues plainly predominate in this case, which challenges Sparc's policy of classifying delivery drivers as independent contractors and taking unauthorized deductions form their pay in violation of the IWPCA. See Johnson, 2020 WL 405636, at *7 ("As noted above, the key issues in the case—whether Defendants violated the IWPCA by classifying drivers as independent contractors and withheld unlawful deductions from drivers' paychecks—can be resolved on a class-wide basis and do not present any issues of individual variation.").[16] This is particularly so since

---

[15] See, e.g., Prokhorov v. IIK Transport, Inc., 2024 WL 3694523 (N.D. Ill. Aug. 7, 2024) (concluding at summary judgment that drivers are employees under IWPCA); Tsybikov, 2023 WL 4029823 at *2 (same); Johnson v. Diakon Logistics, Inc., 44 F.4th 1048, 1053 (7th Cir. 2022) (holding that Illinois law applied to drivers claims arising under IWPCA); BeavEx, 810 F.3d at 1061 (reversing denial of class certification).

[16] Importantly, variations in potential damages do not defeat class certification. Johnson, 2020 WL 405636, at *7 ("while determining the particular amount of deductions that each driver received is a fact intensive inquiry, it is a damages question, not a liability determination. The need to calculate the particular deductions taken from each putative class member for damages purposes does not defeat predominance.").

common questions will be resolved, and common evidence will be used, in analyzing any of the three prongs of the IWPCA's ABC test. In BeavEx, the Seventh Circuit held that predominance under Rule 23(b)(3) could be satisfied even where only one prong of the ABC test could be decided on common evidence. Beavex, 810 F.3d at 1060. As noted above, Prong B of the IWPCA's ABC test, "*only* requires common evidence about [the defendant's] business model, which is applicable to all class members." Id. at 1059–60. For purposes of the "course of business" prong, the Court can easily determine on a classwide basis whether the delivery drivers' job description lines up with the services advertised by Sparc. And as discussed above, Prongs A and C of the employment test will also be resolved based on evidence common to the class.

Plaintiff can also show Sparc violated the IWPCA using common evidence. All drivers experienced the same type of deductions, many of which were purportedly set out in the uniform independent contractor agreements promulgated by Sparc. See Baez Decl. ¶ 10; Benavidez Decl. ¶ 9; Indep. Contractor Agreement § 23; see also Kim Tr. 36 (describing deductions for fuel).

Finally, courts have rejected the argument that the IWPCA requires an individualized analysis as to the location of work. In light of the 2014 amendment to the Illinois Administrative Code, 56 Ill. Adm. Code 300.440 and the decision in Watts v. ADDO Management, L.L.C., 420 Ill. Dec. 501, 506 (Ill. App. (1st) 2018), it is clear that the IWPCA applies to **all** work performed by **all** class members, given that the Defendants were based in Illinois, directed the drivers' work from Illinois, and required all drivers to be bound by an Illinois "choice of law" provision. These facts will determine IWPCA coverage on a class-wide basis. See Tsybikov v. Dovgal, 2022 WL 1238853, at *3 (N.D. Ill. Apr. 27, 2022) (granting class certification even though "the vast majority [of class members] are not Illinois residents and [] the drivers did the majority of their driving outside Illinois"). So long as the drivers performed some amount of work Illinois, the IWPCA applies to them. See Prokhorov v. IIK Transp.,

13

Inc., No. 20 CV 6807, 2024 WL 3694523, at *6-7 (N.D. Ill. Aug. 7, 2024) (finding the IWPCA applies when drivers spent some time, perhaps as little as 10% of their time, driving in Illinois).

### 2. Class adjudication is superior to other available methods.

Adjudicating this matter on a class-wide basis will be more efficient and allow for effective relief to class members who would otherwise be unable to recover. "The second criterion under Rule 23(b)(3), superiority, requires Plaintiffs to demonstrate that 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" Streeter v. Sheriff of Cook County, 256 F.R.D. 609, 615 (N.D. Ill. 2009) (quoting Fed. R. Civ. P. Rule 23(b)(3)).

First, this case challenges a common scheme which has similarly affected a large number of workers, and a class is clearly superior to dozens of individual proceedings. Second, a class action is superior here, because the risk of retaliation effectively eliminates the possibility of individual action.[17] Third, many class members may have a relatively small individual recovery, so they would have an insufficient incentive to bring an action on their own behalf. See Gaspar v. Linvatec Corp., 167 F.R.D. 51, 60 (N.D. Ill. 1996) ("[L]itigating Gaspar's and the other class members' claims in this forum will serve judicial economy . . . and will enable each class member to have his or her day in court without the effort of filing a separate claim and hiring counsel."). In such circumstances, a class is clearly superior to depriving numerous individuals of their day in court.[18]

### 3. The class members are readily ascertainable.

Courts in the Seventh Circuit "have long recognized an implicit requirement under Rule 23 that a class must be defined clearly and that membership be defined by objective criteria rather than

---

[17] See, e.g., Overka v. American Airlines, Inc., 265 F.R.D. 14, 24 (D. Mass. 2010) ("class adjudication is superior in the employment context because fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis").

[18] See Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device.").

by, for example, a class member's state of mind." Mullins v. Direct Digital, LLC, 795 F.3d 654, 657 (7th Cir. 2015). Here, Plaintiffs seek to certify a class of all individuals who entered into a contract with Sparc to perform delivery services; who personally made deliveries for Sparc full-time between December 2013 and the present and who were classified as independent contractors, Courts have found similar class definitions to meet the ascertainability requirement.[19]

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) certify a class consisting of all individuals who worked as delivery drivers for Sparc in Illinois between December 2013 and the present and who were classified as independent contractors; (2) appoint the named Plaintiff, Pedro Baez, as class representative; and (3) appoint Lichten & Liss-Riordan, P.C. as class counsel.

Dated: September 24, 2025.                    Respectfully Submitted,


**PEDRO BAEZ,** individually and on behalf of all others similarly situated,

*Plaintiff*,

By his attorneys,

/s/ Olena Savytska

Harold L. Lichten (*pro hac vice*)
Olena Savytska (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (617) 994-5800

---

[19] DaSilva v. Border Transfer of MA, Inc., 296 F. Supp. 3d 389, 406 (D. Mass. 2017) (class of full-time delivery drivers classified as independent contractors met ascertainability requirement); Hargrove v. Sleepy's LLC, 974 F.3d 467, 479 (3d Cir. 2020) (same); Portillo v. Nat'l Freight, Inc., 336 F.R.D. 85, 97 (D.N.J. 2020) (same); Carrow v. FedEx Ground Package Sys., Inc., 2019 WL 7184548, at *6 (D.N.J. Dec. 26, 2019) (same).

        Fax (617) 994-5801
        hlichten@llrlaw.com
        osavytska@llrlaw.com

        Bradley Manewith, IARDC # 6280535
        Lichten & Liss-Riordan, P.C.
        5 Revere Drive, Suite 200
        Northbrook, IL 60062
        Tel. (617) 994-5800
        Fax (617) 994-5801
        bmanewith@llrlaw.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record through the Court's ECF system this 24th day of September, 2025.

s/ Olena Savytska

Olena Savytska
