**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| PEDRO BAEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DIRECT TRUCKING CORP. d/b/a SPARC TRANSPORT, and EDWARD KIM,<br><br>Defendants. | ) | Case No. 1:23-cv-16888 |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

## I. INTRODUCTION

Plaintiff Pedro Baez, on behalf of himself and the Rule 23 class certified by the Court, moves for partial summary judgment asking this Court to hold, as a matter of law, that he and the class members were employees of Defendant Direct Trucking Corp. d/b/a Sparc Transport ("Direct Trucking") under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. Ann. 115/1 et seq. Under the IWPCA's "ABC" test, Plaintiff and class members are *presumed* to be employees unless Direct Trucking can show that they:

> (1) were free from control and direction over the performance of their work, both under their contracts and in fact; and
> (2) performed work which is either outside the usual course of business or is performed outside all of the places of business of Select One; and
> (3) were engaged in an independently established trade, occupation, profession or business.

820 Ill. Comp. Stat. Ann. 115/2. Direct Trucking cannot satisfy any, let alone all three, of these prongs. Accordingly, Plaintiff asks the Court to grant summary judgement, holding that Plaintiff and class members were employees of Direct Trucking and therefore entitled to the wage protections of the IWPCA. As set out below, and as described in footnote 1, multiple courts in this District have granted summary judgment, on employment status based on nearly identical facts, and the Court should do so in this case.

There is no question that the work Plaintiff and class members performed was at the core of Direct Trucking's business under Prong B: Direct Trucking could not exist without drivers hired to transport freight for Direct Trucking and its customers. See Brown v. Select One, Inc., No. 1:24-cv-00903, Dkt. 105, p. 6 (N.D. Ill. May 7, 2026) (attached hereto as Exhibit 1) ("A trucking

company that provides transportation services cannot exist without its delivery drivers.”).[1] There is also no question that Plaintiff and class members also performed their work within the places of business of Direct Trucking: they were required to communicate on a daily basis with Direct Trucking’s dispatchers in Illinois regarding their assignments; report to the Direct Trucking office in Illinois to fill out onboarding paperwork, complete orientation and training, and drop off paperwork for their trips; and drive trucks and/or trailers registered under Direct Trucking’s DOT number.[2]

In three nearly identical case involving over-the-road drivers, court in this District have found delivery drivers to be employees under the IWPCA’s “ABC” test. See Brown, No. 1:24-cv-00903, Dkt. 105, p. 7 (“Defendants cannot seriously dispute that the class members’ work was performed both in Select One’s usual course of business and at its usual places of business.”); Prokhorov, 2024 WL 3694523, at *8 (collecting cases) (“[D]rivers are necessary for IIK's business, which by its own admission is to provide freight-delivery services . . . IIK's place of business is not limited

[1] See also Costello v. BeavEx Inc., 303 F.R.D. 295, 309 (N.D. Ill. 2014) (finding delivery drivers to employees under Prong B); Johnson v. Diakon Logistics, 2025 WL 964939, at *7 (N.D. Ill. Mar. 31, 2025) (holding that delivery drivers were integral to delivery company business operations); Prokhorov v. IIK Transp., Inc., 2024 WL 3694523, at *8-9 (N.D. Ill. Aug. 7, 2024), reconsideration denied, 2024 WL 6870247 (N.D. Ill. Oct. 18, 2024) (holding delivery drivers as essential to “freight-delivery services”); Tsybikov v. Dovgal, 2023 WL 4029823, at *1 (N.D. Ill. June 15, 2023) (“The work performed by Plaintiffs is clearly the same as the Defendants' businesses . . . .”); Carpetland U.S.A. v. Illinois Dep't of Employment Sec., 201 Ill. 2d 351, 386 (2002) (noting work that is “necessary to” business operations evidences employee status); L.A. McMahon Bldg. Maintenance, Inc. v. Department of Employment Sec., 32 N.E.3d 131, 142 (2015) (affirming window washers performed critical work for window washing business because otherwise business would not exist); E-Z Movers, Inc. v. Rowell, 406 Ill. Dec. 687, 695 (2016) (holding movers provided integral work to moving company and thus were employees); Chicago Messenger Serv. v. Jordan, 356 Ill. App. 3d 101, 107 (2005) (finding delivery couriers performed integral work for messenger company); O'Hare-Midway Limousine Serv., Inc. v. Baker, 232 Ill. App. 3d 108, 111 (1992) (finding limousine drivers were critical business operators for limousine dispatch service); Rozran v. Durkin, 381 Ill. 97, 104 (1942) (holding messenger served core purpose of messenger business and therefore was employee).

[2] Even if the drivers were not regularly required to report to Direct Trucking’s office, courts in this Circuit have made clear that “roadways, delivery routes, sales territories and customer premises are the company's places of business when the worker is representing the company's interest.” In re Fedex Ground Package System, Inc. Empl. Practices Litig., 2010 WL 2243246, at *6 (N.D. Ind. May 28, 2010) (collecting cases).

to its offices in Illinois. In cases involving delivery services, courts routinely recognize that the place of business is not limited to a company's home office(s) given the nature of the work."); Tsybikov, 2023 WL 4029823, at *1 ("the second and third prongs [of the ABC test] leave no question as to Plaintiffs' status as employees . . . The work performed by Plaintiffs is clearly the same as the Defendants' businesses and their trade as delivery drivers is obviously the same as that of the Defendants, *i.e.*, delivery of cargo.").[3]

Plaintiff and class members were also employees of Direct Trucking under Prongs A and C. They were required to sign a form agreement promulgated by Direct Trucking; they worked for Direct Trucking full time; they were required to contact Direct Trucking's dispatchers daily; and to follow orders and delivery instructions from the dispatchers. Direct Trucking tracked the drivers' locations at all times via GPS.[4] Plaintiff and class members worked for Direct Trucking for 60-70 hours per week, fulfilling deliveries negotiated by the company, and driving vehicles bearing the Direct Trucking logo, registered under its DOT number, which meant that they could not make deliveries for any other company.[5]

---

[3] In fact, multiple courts faced with summary judgment motions under the ABC test have found delivery drivers to be employees even where the drivers owned their vehicles and/or had their own DOT operating authority. See Johnson, 2025 WL 964939, at *7 ("The work performed by the class members in this case—furniture and appliance deliveries—thus falls squarely within Diakon's "course of business."); BeavEx, 303 F.R.D. at 311 (finding last-mile delivery drivers were employees); In re Fedex, 2010 WL 2243246, at *6 (finding FedEx drivers were employees under the IWPCA); AFM Messenger Serv., 198 Ill. 2d at 408 (finding courier drivers were employees of courier company); Chicago Messenger Serv, 356 Ill. App. 3d at 116 (same); Zelney v. Murphy, 387 Ill. 492, 505 (1944) (same); Rozran, 381 Ill. at 105 (same).

[4] Muniz v. RXO Last Mile, Inc., 2023 WL 5353749, at *7-8 (D. Mass. Aug. 21, 2023) (finding delivery drivers were not free from supervisors' control while fulfilling deliveries); AFM Messenger Serv. v. Department of Employment Sec., 198 Ill. 2d 380, 401, 403 (2001) (identifying delivery price setting, delivery assignment, and customer billing as methods of employer control); Craig v. FedEx Ground Package Sys., 300 Kan. 788, 808 (2014) (finding employee status where employer controlled vehicle appearance and specifications); Bennett v. Department of Employment Sec., 175 Ill. App. 3d 793, 797 (1988) (finding employee status where employer "set the workers' wages, provided the materials, gave them deadlines for completion, and could discharge them").

[5] AFM Messenger Serv., 198 Ill. 2d at 401-02 (finding "the evidence did not demonstrate that the drivers were able to operate their 'delivery businesses' without the benefit of a relationship with [employer]"); Veterans Messenger Serv. v. Jordan, 393 Ill. App. 3d 715, 722 (2009) (holding "no evidence was presented that . . . couriers could operate their

## II. FACTUAL BACKGROUND

Direct Trucking is a transportation and delivery company specializing in container transportation. SOF ¶ 1. It provides delivery services in Illinois and surrounding states. Id. ¶ 2. 50-60% of Direct Trucking's deliveries are in the state of Illinois. Id. Direct Trucking has offices in Channahon, Elk Grove Village, and Bensenville, Illinois; it has had offices in Illinois at all times during the class period. Id. ¶ 3. Edward Kim, the owner and CEO of Direct Trucking, works out of the company's Elk Grove, Illinois location. Id. ¶¶ 4-5. Direct Trucking stores the trucks its drivers use to make deliveries at its Chahannon, Illinois facility. Id. ¶ 8. Delivery drivers regularly visit the Direct Trucking offices to meet with on-site staff members, including Kim, participate in orientation, or to pick up paperwork. SOF ¶ 12.

Direct Trucking maintains on-site dispatchers for its delivery drivers; drivers are required to communicate with the dispatchers daily; they receive information regarding pick-up and delivery locations and times, as well as load specifications, from the dispatchers, and report any issues with their assigned deliveries to the dispatchers. SOF ¶¶ 9, 13, 30-31. Direct Trucking's safety manager handles delivery drivers' interviews and onboarding. Id. ¶ 14. Direct Trucking also employs an operations support specialist who handles proof-of-delivery documentation and serves as a communications liaison between drivers and customers. Id. ¶ 10.

---

delivery services without the solicitation of customers by [employer]"); Koontz Aviation, Inc. v. Labor & Indus. Relations Com., 650 S.W.2d 331, 334 (Mo. Ct. App. 1983) ("[T]he drivers were dependent upon Koontz for their business, in that the drivers delivering baggage did so only by virtue of Koontz' contract with the airlines . . . [drivers] received all of their assignments from Koontz and utilized its limousines."); Affordable Cabs, Inc. v. Employment Sec., 124 Wash. App. 361, 371-72 (2004) (finding that drivers who did not function as independent businesses were not independent contractors).

In order to work for Direct Trucking, delivery drivers are required to have a minimum of two years' driving experience. SOF ¶ 16. Drivers are required to complete an application and onboarding documents, and submit a medical card before being hired by Direct Trucking. Id. ¶ 17. Drivers must also undergo pre-employment drug testing in order to work for Direct Trucking. Id. ¶ 18. Drivers must also participate in an orientation session conducted by the safety manager, during which they learn about Direct Trucking's policies, rules and requirements. Id. ¶ 19. Delivery drivers are required to sign a form independent contractor agreement prior to beginning work for Direct Trucking. Id. ¶ 19.

Direct Trucking requires drivers to have specific insurance coverage in order to drive for the company. SOF ¶ 24. When drivers use the insurance coverage facilitated by Direct Trucking, the cost of insurance is deducted from their paychecks. Id. ¶ 25. Direct Trucking also requires delivery drivers to maintain an escrow fund, which is used to cover truck repairs and other expenses. Id. ¶ 27. Direct Trucking can retain the full amount of an escrow fund upon a driver's termination if it decides the driver owes Direct Trucking more than the balance of the escrow fund. Id. ¶ 28. Delivery drivers use fuel cards provided by Direct Trucking to purchase gas; the cost of gas is then deducted from their paychecks. Id. ¶ 23.

Delivery drivers typically work a set schedule of 5 days a week while making deliveries for Direct Trucking. SOF ¶ 36. Delivery drivers receive a set pay rate for their deliveries. SOF ¶ 29. Delivery drivers operate trucks with Direct Trucking's logo, which are registered under Direct Trucking's DOT number. Id. ¶¶ 21, 26. Direct Trucking monitors delivery drivers' locations using a GPS tracking system. Id. ¶ 11. Direct Trucking also tracks drivers' work hours through ELD devices located in their trucks. Id. ¶ 22. Drivers are required to report any delays, traffic issues or

difficulties locating the delivery load, to their dispatcher. Id. ¶ 32. Delivery drivers are also required to contact their dispatcher once a load is delivered. Id.

Delivery drivers are required to call Direct Trucking's safety manager in the event of an accident. SOF ¶ 33. Direct Trucking makes deductions from delivery drivers' pay for accidents and damaged loads. Id. ¶¶ 34-35. Drivers are required to provide daily log sheets to Direct Trucking as well as proof of delivery ("POD") and interchange sheets. Id. ¶ 37. If drivers fail to submit these documents, Direct Trucking can withhold their pay. Id. Direct Trucking issues weekly pay statements to delivery drivers. Id. ¶ 38. Direct Trucking takes a variety of deductions from delivery drivers' pay, including for insurance, license plate fees, escrow, fuel, tolls, ELDs, and truck repair. Id. ¶ 39. Direct Trucking does not have an official expense reimbursement policy. Id. ¶ 40.

Plaintiff and class members worked as delivery drivers for Direct Trucking between 2011 and 2025, making local and regional deliveries in Illinois and neighboring states. SOF ¶¶ 41, 43. They were classified by Direct Trucking as independent contractors. Id. ¶ 42. Prior to beginning work for Direct Trucking, Plaintiff and class members were required to a background check, a drug test, and a driving record check before beginning work for Direct Trucking. Id. ¶ 44. Plaintiff and class members were required to have GPS devices in their trucks. Id. ¶ 46. Direct Trucking required Plaintiff and class members to follow various safety and operational policies, including paying fines for delivery or maintenance issues. Id. ¶ 47.

Plaintiff and class members received their delivery assignments from Direct Trucking dispatchers and were required to communicate with the dispatchers about the progress of their deliveries. Id. ¶ 45. The dispatchers gave instructions to Plaintiff and class members about where and when to pick up and drop off loads. Id. ¶¶ 52, 57. Plaintiff Baez tracked his assigned deliveries on

a weekly timesheet. Id. ¶ 56. Plaintiff Baez was pressured to accept assigned loads; his efforts to reject a load for safety reasons were unsuccessful. Id. ¶¶ 58-59.

Plaintiff and class members drove trucks bearing Direct Trucking's logo; these trucks were registered under Direct Trucking's DOT number. SOF ¶ 48. They typically worked for Direct Trucking 60-70 hours a week. Id. ¶ 49. Because of the long hours they worked for Direct Trucking and because their trucks were registered under Direct Trucking's DOT number, Plaintiff and class members made deliveries exclusively for Direct Trucking. Id. ¶ 50.

Plaintiff and class members were paid a set number of cents per mile for the deliveries they made. SOF ¶ 51. Direct Trucking took Plaintiff's and class members' pay for items including insurance, truck and trailer rental payments, fuel, toll passes, cargo and liability insurance, occupational accident insurance, tolls, escrow, and ELD service. Id. ¶ 53. Plaintiff and class members were not informed of these deductions in advance and were not able to contest them. Id. ¶ 54. Plaintiff and class members were forced to bear out-of-pocket expenses in the course of their work for Direct Trucking, including for fuel, cell phones, GPS devices, truck maintenance, and insurance, for which they were not reimbursed. Id. ¶ 55.

## III. LEGAL STANDARD

"A motion for summary judgment must be granted when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Prokhorov, 2024 WL 3694523, at *1 (quoting Fed. R. Civ. P. 56(a)).

## IV. ARGUMENT

In determining whether workers are employees or independent contractors, Illinois courts rely on the "ABC" test. [6] This test focuses on the actual circumstances of the worker-employer relationship. 56 Ill. Admin. Code § 300.460 (c). All three prongs must be satisfied for a worker to be an independent contractor[7] and "there is a strict burden of proof placed upon one claiming an exemption." Griffitts Constr. Co. v. Department of Labor, 76 Ill. 2d 99, 104 (1979). Here, Select One satisfies none of the three prongs.

### A. Plaintiff and Class Members were Employees of Direct Trucking under Prong B

Direct Trucking cannot satisfy Prong B of the ABC test, which requires a worker to be classified as an employee unless their work "is either outside the usual course of business or is performed outside all of the places of business of the employer." 820 Ill. Comp. Stat. Ann. 115/2. The inquiry under prong B is "whether the services are necessary to the business of the employing unit or merely incidental." Carpetland, 201 Ill. 2d at 386. A place of business is not confined to a single location and may "extend[] to any location where workers regularly represent [an employer's] interests." L.A. McMahon, 32 N.E.3d at 142 (finding window washers visiting customer residences worked at place of employer's business).

---

[6] Because the definitions for an "employee" under the Unemployment Act and the IWPCA are identical, Illinois courts regularly treat judicial precedent interpreting the Unemployment Act as instructive in decisions involving the IWPCA. Novakovic v Samutin, 354 Ill. App. 3d 660, 668 (Ill. App. Ct. 2004) (applying court rulings interpreting the Unemployment Act to claims brought under the IWPCA for the purpose of determining employment status); see also Anderson v. First Am. Grp of Cos., Inc., 353 Ill. App. 3d 403, 408 (2004) (same). Under both the IWPCA and the Unemployment Act, Illinois and federal courts have routinely determined that delivery drivers are employees of the delivery companies – not independent contractors. See, e.g., BeavEx, 303 F.R.D. at 311; In re Fedex, 2010 WL 2243246, at *6; AFM Messenger Serv., 198 Ill. 2d at 408; Chicago Messenger Serv., 356 Ill. App. 3d at 116; Zelney, 387 Ill. at 505; Rozran, 381 Ill. at 105.

[7] 56 Ill. Admin. Code § 300.460 (c) ("All three conditions . . . must be satisfied for the independent contractor exemption to apply."); BeavEx, 303 F.R.D. at 306 (the "employer must demonstrate each element of the exemption in order to demonstrate that the service provider is an independent contractor."); AFM Messenger Serv., 198 Ill. 2d at 397 (finding "all three conditions must be satisfied for the independent-contractor exemption to apply").

There is no question that Plaintiff and class members' work was at the very core of Direct Trucking's business. See BeavEx, 303 F.R.D. at 309, 310 (where "BeavEx is a same-day delivery service company, and its primary function is to provide motor vehicle transportation of property for compensation," and "[t]he Plaintiffs were courier drivers who performed delivery services for BeavEx," it was "undisputed and beyond doubt that BeavEx's delivery drivers performed work in the usual course of BeavEx's package and delivery business."); Brown, No. 1:24-cv-00903, Dkt. 105, p. 6 ("Select One's website describes itself as a "customer-focused trucking company," and, by its own admission, Select One is in the business of providing transportation and logistics services. A trucking company that provides transportation services cannot exist without its delivery drivers."); Johnson, 2025 WL 964939, at *7 (appliance delivery drivers' work fell "squarely within [employer's] 'course of business'") (citation omitted); Prokhorov, 2024 WL 3694523, at *8-9 (("[D]rivers are necessary for IIK's business, which by its own admission is to provide freight-delivery services"); Tsybikov, 2023 WL 4029823, at *1 ("The work performed by Plaintiffs is clearly the same as the Defendants' businesses and their trade as delivery drivers is obviously the same as that of the Defendants, *i.e.*, delivery of cargo."); E-Z Movers, 406 Ill. Dec. at 695 (finding "a moving company would not exist without its workers to physically haul the items"); Rozran, 381 Ill. at 104 ("[S]ervices performed by [delivery driver] . . . formed a part of the company's usual course of business."). Here, Direct Trucking's – a company specializing in container transportation – would cease to function without drivers. SOF ¶ 1; Carpetland U.S.A., 201 Ill. 2d at 386.

Plaintiff and class members also performed work within Direct Trucking's places of business. Courts in this Circuit have made clear that "[a]n employer's place of business is not limited only to its own home offices, but can extend to any location where workers regularly represent an

employer's interest." BeavEx Inc., 303 F.R.D. at 310.[8] Instead, "roadways, delivery routes, sales territories and customer premises are the company's places of business when the worker is representing the company's interest. In re Fedex, 2010 WL 2243246, at *6 (collecting cases); see Brown, No. 1:24-cv-00903, Dkt. 105, p. 7 ("Because Select One provides delivery services throughout the United States, moreover, its "places of business" include the delivery routes driven by the class members."); Johnson, 2025 WL 964939, at *7 ("[E]ven if the drivers did not report to Romeoville routinely, they still performed their work at Diakon's place of business because in cases involving delivery services, the 'place of business extend[s] to the delivery routes that drivers took . . . .'") (citation omitted); Prokhorov, 2024 WL 3694523, at *8 ("[D]rivers are necessary for IIK's business, which by its own admission is to provide freight-delivery services . . . IIK's place of business is not limited to its offices in Illinois. In cases involving delivery services, courts routinely recognize that the place of business is not limited to a company's home office(s) given the nature of the work."); Chicago Messenger Serv., 356 Ill. App. 3d at 107 (finding delivery couriers provided service within usual course of courier business despite no fixed worksite location); O'Hare-Midway Limousine Serv., 232 Ill. App. 3d at 111 (holding chauffeur service workspace includes "roadways traveled" by drivers who "represented the [company] interests"). Plaintiff and class members made deliveries for Direct Trucking and its customers, operating trucks with Direct Trucking's

---

[8] See also AFM Messenger Serv., 315 Ill. App. 3d at 315 finding that the roadway was the defendant courier companies' usual place of business); Chicago Messenger Serv., 356 Ill. App. 3d at 112 (a "delivery route" may constitute a putative employer's place of business); O'Hare-Midway Limousine Serv., 232 Ill. App. 3d at 113 (place of business included roads traveled where drivers represented the interests of the company whenever they picked up passengers); Superior Life, Health & Accident Ins. Co. v. Bd. of Review of Unemployment Comp. Comm'n, 127 N.J.L. 537, 540 (Sup. Ct. 1942) (in case involving salesmen with assigned territories, "the 'business of the enterprise'…was at no fixed place but the services were to be performed at any place within the prescribed area where the [customers] were located …"); In the Matter of D.W.T., Review Bd. Dec., 1997 WL 356489 (N.J. Adm. March 12, 1997) (explaining that a place of business can include delivery routes or customers' homes or other places workers must report to).

logo and registered under Direct Trucking's DOT number. SOF ¶¶ 21, 26, 43, 48. Plaintiff and class members are therefore employees under Prong B of the IWPCA.

Defendants may attempt to argue that Plaintiff and class members performed some of their work outside of Illinois, and that therefore such work should be exempt from their claims under the IWPCA. Courts in similar delivery driver cases in this District have rejected such arguments. See Latipov v. AN Enterprise Inc., 2025 WL 1518058 at *2 (N.D. Ill. May 28, 2025) ("If some work is performed in Illinois, the Act applies); see also Watts v. ADDO Management, L.L.C., 2018 IL App (1st) 170201 ¶ 21 (2018) ("it is clear that the Wage Act's application is not limited to any specific quantum of work performed in Illinois but, in fact, may apply in certain circumstances *even where all of the work is performed outside of this state.*") (emphasis added). As such, the Act's protections apply to all work performed by Plaintiff and class members, and not merely the work performed within the state of Illinois. See Johnson, 2025 WL 964939 at *8 (finding that all delivery drivers' work was subject to IWPCA coverage where some work took place in Illinois); Prokhorov, 2024 WL 3694523, at *7 ("Because class members performed *some* work in Illinois . . . the [IWPCA] applies."); Tsybikov, 2023 WL 4029823, at *2 (affirming delivery drivers' part-time work in Illinois was sufficient for IWPCA to apply); see also Brown, No. 1:24-cv-00903, Dkt. 105, p. 5 (noting that "Select One is an Illinois company in the business of providing interstate delivery services. Its headquarters, which is available for drivers as a rest stop and offers an in-house mechanic, is located in Illinois. It requires each driver to register with its Illinois DOT number and bear its company logo. And it conducts its driver training in Illinois.").

**B. Direct Trucking Exercised Significant Control Over Plaintiff and Class Members under Prong A**

Even though it is sufficient for Plaintiff to show that he and the class members were employees of Direct Trucking under Prong B, Plaintiff and class members were also employees of Direct Trucking under Prong A, since they were not "free from control and direction over the performance of [their] work." 820 Ill. Comp. Stat. Ann. 115/2. This control can be found in the driver contract or in the reality of the working dynamic. Id.; Muniz, 2023 WL 5353749, at *5 ("If the employer in fact exerted control over the employees, it does not matter whether they had a contractual right to do so."). Control is defined as "the existence of general control or right to general control, even though the details of work are left to an individual's judgment." 56 Ill. Admin. Code § 300.460 (a)(1). Several other states have affirmed that, under the ABC test, the employer need not maintain control of every element of a worker's responsibilities or actions. [9] "[T]he business reality or totality of circumstances will determine" the nexus of control. 56 Ill. Admin. Code § 2732.200.

Evidence of control under Prong A can include driver contracts; pay rates set by the employer; directions provided to drivers; and rules and requirements for vehicles. See, e.g., Craig, 300 Kan. at 808 (finding employee status where employer "requires that drivers comply with strict vehicle appearance, specification, and maintenance requirements"); Bennett, 175 Ill. App. 3d at 797 (finding employee status where employer controlled contract, wages, and conditions); see also

---

[9] Hargrove v. Sleepy's, LLC, 220 N.J. 289, 305 (2015) (noting New Jersey ABC tests do not require total employer control over all aspects of worker); Fucci v. Eastern Connection Operating, Inc., No. MICV 2008-2659, 2009 Mass. Super. LEXIS 421, at *11 (Sep. 21, 2009) (finding that limited worker control to reject route offerings did not overcome substantial employer control of working conditions and requirements in Massachusetts).

Tsybikov, 2023 WL 4029823, at *1-2 (noting evidence of employee status where "[p]laintiffs receive delivery instructions from Defendants' dispatchers, and must report periodically to Defendants as to progress on deliveries and pickups.").

Here, Direct Trucking required drivers to sign form independent contractor agreements, and set out various rules and requirements for their work. See SOF ¶¶ 20, 24, 27, 32-33; see also Bennett, 175 Ill. App. 3d at 797. Plaintiff and class members were offered only deliveries and pay rates predetermined by Direct Trucking. SOF ¶¶ 29, 31, 45, 51, 58-59; see also AFM Messenger Serv., 198 Ill. 2d at 401, 403. Plaintiff's and class members were required to communicate with Direct Trucking's dispatchers daily, and the dispatchers provided all information about delivery logistics and used GPS tracking to monitor drivers. SOF ¶¶ 11, 30-32, 52; Craig, 300 Kan. at 808; Tsybikov, 2023 WL 4029823, at *1-2. Plaintiff and class members were therefore employees of Direct Trucking under Prong of Part A of the ABC test.

### C. Plaintiff and Class Members Did Not Operate Independently Established Businesses under Prong C

Direct Trucking also cannot show that its drivers "[were] in an independently established trade, occupation, profession or business," under Part C of the ABC test. 820 Ill. Comp. Stat. Ann. 115/2. Under Prong C, an independent contractor "has a proprietary interest in the business that he or she can sell, give away or operate without hinderance from any other party." 56 Ill. Admin. Code § 2732.200 (e). The statute outlines factors to determine whether an individual has established an independent business, including, among others, a worker's public reputation, financial stake, and the impact of termination on the worker's business interests. Id.; see also SMRJ, Inc. v. Russell, 378 Ill. App. 3d 563, 569 (2007) (finding no independent business where "workers did not have interests in businesses that were not subject to cancellation or destruction upon severance

of the relationship with [employer]"); E-Z Movers, 406 Ill. Dec. at 696 (finding no independent business where employer "procured all the customers, set the prices, determined the drivers' and helpers' commissions, provided the assignments, billed the customers, set the commissions, and paid the drivers and helpers"); AFM Messenger Serv., 198 Ill. 2d at 401-02 (identifying delivery drivers as employees where employer set pricing, billing, and delivery assignments); Veterans Messenger Serv., 393 Ill. App. 3d at 722 ( "[N]o evidence was presented that Veterans' couriers could operate their delivery services without the solicitation of customers by Veterans").

Other jurisdictions applying the ABC test have affirmed that when a driver is solely reliant upon an employer for business, they have no independent business entity. Koontz Aviation, 650 S.W.2d at 334 ("[D]rivers were dependent upon Koontz for their business . . . the drivers could not have survived independent of their relationship with Koontz."); Affordable Cabs, 124 Wash. App. at 371-72 (holding that cab drivers could not operate without employer's resources).

Plaintiff and class members in this case held no stake in Direct Trucking's business, profits, or assets; the only driver buy-in was for truck rentals. SOF ¶ 27, 33; 56 Ill. Admin. Code § 2732.200 (e). Plaintiff and class members drove 70-80 hours each week for Select One, leaving no opportunity to operate under a personal brand. SOF ¶ 53; 56 Ill. Admin. Code § 2732.200 (e). Plaintiff and class members drove trucks with the Direct Trucking logo, fulfilling contracts brokered by Direct Trucking and reporting to Direct Trucking dispatchers. SOF ¶¶ 26, 29-31. They did not present to the public independently; they also did not hire their own employees, personally advertise, or report Select One as an independent business to state authorities. 56 Ill. Admin. Code § 2732.200 (e); see also Tsybikov, 2023 WL 4029823, at *1 (holding that employer's requirement that vehicles bear company logo is evidence of employee status under Prong C). Most importantly, because Plaintiff and other delivery drivers operated trucks registered under Direct Trcking's DOT

number, they were unable, as a practical matter, to perform work for any other company. SOF ¶¶ 48, 50. Direct Trucking maintained the right to terminate delivery drivers at any time (see SOF ¶ 15) and drivers would not have been able to economically survive without the deliveries Direct Trucking assigned to them. SMRJ, 378 Ill. App. 3d at 569; Veterans Messenger Serv., 393 Ill. App. 3d 722; Koontz Aviation, 650 S.W.2d at 334; Affordable Cabs, 124 Wash. App. 361, 371-72. Select One cannot show that Plaintiff and other drivers "[were] in an independently established trade, occupation, profession or business." 820 Ill. Comp. Stat. Ann. 115/2.

**C. CONCLUSION**

Plaintiff respectfully requests that the Court grant his Motion for Partial Summary Judgment and find that Plaintiff and class members were employees of Direct Trucking under the IWCPA.

DATED: May 15, 2026

Respectfully Submitted,

/s/ *Olena Savytska*

Harold Lichten (*pro hac vice*)
Olena Savytska (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (617) 994-5800
Fax (617) 994-5801
hlichten@llrlaw.com
osavytska@llrlaw.com

Bradley Manewith, IARDC # 6280535
Lichten & Liss-Riordan, P.C.
5 Revere Drive, Suite 200
Northbrook, IL 60062
Tel. (617) 994-5800
Fax (617) 994-5801
bmanewith@llrlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record through the Court's ECF system this 15th day of May, 2026.

s/ Olena Savytska

Olena Savytska